## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

KEITH BOMBAUGH,
an individual,

                                       Case No.:

      Plaintiff,

v.

EXPERIAN INFORMATION
SOLUTIONS, INC.,
a foreign for-profit corporation, and
RENT RECOVERY SOLUTIONS, LLC,
a foreign limited liability company,

      Defendants.

_____/

### PLAINTIFF'S NOTICE OF LEAD COUNSEL DESIGNATION

Plaintiff, KEITH BOMBAUGH, by and through the undersigned counsel, pursuant to Middle District of Florida Local Rule 2.02(a), hereby designates Jon P. Dubbeld, Esq. as Lead Counsel for Plaintiff.

### COMPLAINT

**COMES NOW**, Plaintiff, KEITH BOMBAUGH (hereinafter, "Plaintiff"), by and through the undersigned counsel, and hereby files this Complaint against Defendants, EXPERIAN INFORMATION SIOLUTIONS, INC., (hereinafter, "Experian"), and RENT RECOVERY SOLUTIONS, INC. (hereinafter, "Rent Recovery") (hereinafter collectively, "Defendants"). In support thereof, Plaintiff states:

## PRELIMINARY STATEMENT

1.     This is an action brought by an individual consumer for damages for Rent Recovery's violations of the Fair Credit Reporting Act, 15 United States Code, Section 1681 *et seq*. (hereinafter, the "FCRA") wherein Rent Recovery improperly credit-reported and subsequently improperly verified its credit reporting of an alleged balance owed on Plaintiff's consumer credit report and in Plaintiff's consumer credit file as maintained by Equifax, Experian, and Trans Union that was allegedly incurred after the termination of Plaintiff's lease.  More specifically, despite Plaintiff advising Rent Recovery that he did not owe monies on this Account as he did not have an active lease at the time he was charged---and after Plaintiff disputed Rent Recovery's reporting of such erroneous information directly to Experian---Rent Recovery continued to report such account with a significant fraudulent balance and past-due.

2.     Additionally, this is an action for damages resulting from Experian's violations of the FCRA wherein Experian continued to incorrectly report the Alleged Debt on the Account after Plaintiff disputed and advised that any balance allegedly owed was incurred in error as Plaintiff had ended his lease prior to the charges being incurred; and after Plaintiff provided information to Experian in support of his dispute, including but not limited to Plaintiff's new binding lease and the original creditor's own payment ledger showing Plaintiff paid past his lease requirement for the entire month of June 2020 in order to enter into a new lease on July 1, 2020.

3.     Further, this is an action for damages for Rent Recovery's violations of the Fair Debt Collection Practices Act, 15 United States Code, Section 1692 (the

"FDCPA") wherein the above Defendant Rent Recovery unfairly attempted to collect an alleged, illegitimate consumer debt from Plaintiff. Despite not owing the fraudulent balance incurred on the Account, Rent Recovery continued to demand payment from Plaintiff on the alleged debt.

4.     Finally, this is an action for damages for Rent Recovery's violations of the Florida Consumer Collection Practices Act, Chapter 559 Florida Statutes (hereinafter, "FCCPA"), wherein Rent Recovery communicated with Plaintiff in an attempt to collect a consumer debt Rent Recovery knew was not legitimately owned by Plaintiff.

## JURISDICTION, VENUE & PARTIES

1.     Jurisdiction of this Court arises under 28 United States Code, Section 1331, pursuant to the FCRA, 15 United States Code Section 1681, *et seq*. The Court has authority to issue a declaratory judgment under 28 United States Code, Section 2201 and has supplemental authority over Plaintiff's FCCPA claims pursuant to 28 United States Code, Section 1367.

5.     Defendants are subject to the jurisdiction of this Court as Defendants each regularly transact business in this District.

6.     Venue is proper in this District as the acts and transactions described herein occur in this District.

7.     At all material times herein, Plaintiff is a natural person residing in Pinellas County, Florida.

8.     At all material times herein, Experian is a for-profit corporation existing

3

under the laws of the state of Ohio with its principal place of business located at 475 Anton Boulevard, Costa Mesa, California 92626.

9.     At all material times herein, Rent Recovery Solutions, LLC is a foreign limited liability company existing under the laws of the state of Georgia with its principal place of business located at 1945 The Exchange SE, Suite 120, Atlanta, GA 30339.

## FCRA STATUTORY STRUCTURE

10.     Congress enacted the FCRA requiring consumer reporting agencies to adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information.  *See* 15 United States Code, Section 1681b.

11.     Under the FCRA, whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure *maximum possible accuracy* of the information concerning the individual about whom the report relates. *Id.* at § e(b) (emphasis added).

12.     Under the FCRA, if a consumer disputes the completeness or accuracy of any item of information contained in a consumer's file, and the consumer notifies the agency directly of such dispute, the agency shall reinvestigate—free of charge— and report the current status of the disputed information, or delete the item from before the end of the 30-day period beginning on the date on which the agency receives notice of the consumer's dispute.  *Id.* at § i(a).

13.    Under the FCRA, when a consumer reporting agency conducts any reinvestigation with respect to disputed information in the file of any consumer, the consumer reporting agency shall review and consider all relevant information submitted by the consumer. *Id.* at § i(a)(4).

14.    Under the FCRA, if, after any reinvestigation of any information disputed by a consumer, an item of information is found to be inaccurate, incomplete, or cannot be verified, the consumer reporting agency shall promptly delete that item of information from the consumer's file or modify that item of information, as appropriate, based on the results of the reinvestigation. *Id.* at § i(a)(5).

15.    Under the FCRA, after a furnisher of information receives notification pursuant to Section 1681i(a)(2) of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the furnisher shall: (A) conduct an investigation with respect to the disputed information; (B) review all relevant information provided by the consumer reporting agency pursuant to Section 1681i(a)(2) of this title; (C) report the results of the investigation to the consumer reporting agency; and (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis. *Id.* at § s-2(b).

16.    Under the FCRA, any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer: in an amount equal to the sum of any actual damages sustained by the

consumer as a result of the failure; for statutory damages of not less than $100 and not more than $1,000; for such amount of punitive damages as the court may allow; and for the costs of the action together with reasonable attorneys' fees. *Id.* at § n.

17.    Under the FCRA, any person who is negligent in failing to comply with any requirement imposed with respect to any consumer is liable to that consumer in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure and the costs of the action together with reasonable attorneys' fees. *Id.* at § o.

### FCCPA AND FDCPA STATUTORY STRUCTURE

20.    The FCCPA is a state consumer protection statute, modeled after the FDCPA, a statute designed to prohibit unfair, deceptive, and abusive practices in the collection of consumer debts as well as to protect against the invasion of individual privacy. 15 U.S.C. §§ 1692(a) and (e); Fla. Stat. §§ 559.55 and 559.77(5).

21.    The FDCPA imposes civil liability on any debt collector—and the FCCPA imposes liability on any creditor/person as well as any debt collector—who "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another" and both statutes prohibit engaging in particular violative conduct in connection with collecting consumer debts. 15 U.S.C. § 1692(a)(6); Fla. Stat. § 559.55(5).

22.    Specifically, the FDCPA and FCCPA prohibit unlawful debt collection "communication" with consumer debtors, which is defined as "the conveying of information regarding a debt directly or indirectly to any person through any medium."

15 U.S.C. § 1692a(2); Fla. Stat. § 559.55(2) (emphasis added).

23.    For example, the FDCPA prohibits a debt collector from using false, deceptive, or misleading representations or means in connection with the collection of any consumer debt. See 15 U.S.C. §§ 1692(d)-(e).

24.    Similarly, the FCCPA prohibits a person from attempting to collect a consumer debt that is known to be illegitimate. See Fla. Stat. §§ 559.72 (9).

## GENERAL ALLEGATIONS

23.    At all material times herein, Plaintiff is an alleged "consumer" or "debtor" as defined by the FCRA, Section 1681a(c) and the FCCPA, Section 559.55(8) and the FDCPA, Section 1692a(3) because he is an individual and allegedly obligated to pay a debt.

24.    At all material times herein, Rent Recovery, by and through their subsidiaries, is a debt collector and regularly attempts to collect debts associated with the same—allegedly owed by consumers residing in Pinellas County, Florida.

25.    At all material times herein, Rent Recovery furnishes information to Equifax, Experian, and Trans Union concerning an alleged delinquent balance on a consumer account that was created as a result of mistake or error, referenced by Account number : 724078X (hereinafter, the "Alleged Debt" or the "Account").

26.    At all material times herein, Rent Recovery reports information concerning alleged collections accounts that were opened as a result of improper debt collection or mistake, including Plaintiff's Rent Recovery Account.

27.    At all material times herein, Rent Recovery attempted to collect on the

Alleged Debt, including but not limited to, a balance allegedly owed for rent for a tenancy that had ended, and thus Plaintiff no longer owed or possessed.

28.     At all material times herein, Plaintiff ended his tenancy related to the Account and moved out on June 30, 2020. Plaintiff did not re-open the Account by starting a new lease with Landlord or fail to close the Account properly. Plaintiff did not authorize any individual or entity to open another Account in his name, Plaintiff did not use the Account in any manner upon closing, and Plaintiff did not receive the benefit of any goods or services as a result of any transactions made using the Account after it was terminated.

30.     At all material times herein, Rent Recovery uses interstate mail, and the principal purpose of its business is to collect debt.

31.     At all material times herein, Rent Recovery is considered a "person" who furnishes information to credit reporting agencies as provided in the FCRA and as defined by 15 United States Code, Section 1681s-2.

32.     At all material times herein, Rent Recovery is considered a "person" subject to the FCCPA, Section 559.72.  *See* Fla. Stat. § 559.55(3); *Schauer v. General Motors Acceptance Corp.*, 819 So. 2d 809 (Fla. 4th DCA 2002).

33.     At all material times herein, Rent Recovery's conduct, with regard to the Alleged Debt complained of below, qualifies as "communication" as defined by the FCCPA, Section 559.55(2) and the FDCPA, Section 1692a(2).

34.     At all material times herein, Rent Recovery furnishes information to Equifax, Experian, and Trans Union regarding the Account and the corresponding

Alleged Debt.

35.    At all material times herein, Rent Recovery furnishes, reports, and publishes specific details of consumers alleged outstanding or delinquent debt accounts to compel or coerce the consumer to either satisfy an alleged balance owed, or suffer the consequences of delinquent accounts, such as higher interest rates on consumer loans or complete denial of credit.

36.    At all material times herein, Equifax, Experian, and Trans Union are each is a "consumer reporting agency" as defined in 15 United States Code, Section 1681a(f) of the FCRA and Defendants regularly engage in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports.  Defendants disburse such consumer reports to third parties under contract for monetary compensation.

37.    At all material times herein, Defendants act themselves or through their agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, third-party vendors, and insurers.

38.    All necessary conditions precedent to the filing of this action occurred, or Defendants waived or excused the same.

## **FACTUAL ALLEGATIONS**

39.    On or about June 10, 2019, Plaintiff signed a lease with Circle Arms LLC (hereinafter, "Landlord" or "Circle Arms") in order to obtain an apartment at 2416 K Street, NW, Apartment 0404, Washington DC 20037.

40.    The terms of the lease included a starting date to take possession of the

property on June 15, 2019, and a clear termination of the tenancy on June 14, 2020.

41.    The lease with Circle Arms explicitly states the lease terms on page 1, "for a term of 12 months, to commence on 6/15/2019."

42.    Plaintiff began living at the apartment throughout the lease term and eventually searched for and found another apartment he intended to sign a new lease with to occupy a new apartment beginning on July 1, 2020.

43.    Plaintiff notified management at Circle Arms on multiple occasions that he intended on moving out on June 30, 2020, in order to begin the new lease.

44.    Circle Arms offered to allow Plaintiff to pay full rent for the month of June, even though his lease expired on June 14, 2020- thus if Plaintiff paid the full monthly rental value of $1,850.00 on June 1st- he could stay for the entire month of June and then vacate to begin his new lease elsewhere.

45.    Plaintiff agreed and just as the attached Circle Arms ledger illustrates, Plaintiff paid $1,850.00 on June 9, 2020, in order to stay in the unit for the entire month of June despite this two week period being an extension of the lease terms.

46.    Circle Arms charged Plaintiff full rent for the month of June and allowed Plaintiff to pay that full month's rent consistent with the agreement.

47.    Thus, Plaintiff no contractual obligation to pay rent after his obligation to the lease had ended on June 30, 2020.

48.    It is notable that the following events occurred during the COVID-19 pandemic, where contact was limited and the organization and communication of Circle Arms at the time Plaintiff was a resident was severely lacking.

10

49.    Plaintiff vacated the apartment on June 30, 2020.

50.    Plaintiff signed a new lease in Arlington Virginia with Fort Georgetown Associates Limited Partnership, which began on July 1, 2020.

51.    Thus, Plaintiff had a new legally binding lease at a subsequent property and was living elsewhere as of July 1, 2020.

52.    Plaintiff continued to live in his new apartment and received no communication whatsoever from Circle Arms or any other entity in regard to his lease or any fees involved with his vacating the apartment and ending the tenancy.

53.    In February of 2025, **almost five years after** Plaintiff had vacated his lease, Plaintiff discovered that a company called Rent Recovery Solutions began reporting a balance of $1,426.00 as an Account in collections for unpaid rent allegedly owed by him for the month of July 2020, referenced by Account No. 007240784. (hereinafter, the "Account").

54.    Further, despite the lease ending on June 14, 2020, and the complex allowing Plaintiff to pay a full month's rent for the month of June, the complex reported in its own ledger the following charge codes:

|  |  |  |
|---|---|---|
| 7.01.2020 | Rent (7/2020): | $1,850.00 |
| 7.01.2020 | Furniture Rental: | $145.00 |
| 7.01.2020 | Renters Insurance | $12.00 |

These charges are contradictory to the lease and are facially improper as no renewal or month-to-month designation was made for Plaintiff nor do they appear anywhere on the ledger provided.

11

55. Thus, the Landlord attempted to prorate a month that simply was not owed by Plaintiff as he was not present in the apartment during this time.

56. Additionally, the Landlord's own ledger shows a Bad Debt/Write Off charge on 9.28.21 in the amount of $1,426.53 and a final balance later paid of $370.00.

57. Plaintiff had not renewed his lease, nor converted his tenancy status, nor was he a holdover tenant.

58. Plaintiff did not owe the outstanding balance as he had already paid June 2020 in full and agreed with Circle Arms management that he would be moving out June 30, 2020, and Plaintiff complied.

59. Plaintiff disputed this debt several times over the phone with Circle Arms Apartments with a case manager on various occasions in February of 2025 once the error was discovered.

60. After no resolution, Plaintiff mailed a formal dispute by certified mail to the original creditor and Landlord on July 30, 2025, where he outlined that the claim was disputed, that Plaintiff did not owe the outstanding debt as his tenancy at the time had ended, and that he was formally requesting complete validation of the debt.

61. Plaintiff provided in his dispute a copy of his new fully executed lease in Virginia, illustrating that Plaintiff indeed took possession of a new tenancy as of July 1, 2020, and had no lease with his prior Landlord.

62. Even further, Plaintiff advised Rent Recovery that he was requesting documentation from them and until that documentation was received, Rent Recovery must cease all collections activities related to this debt including phone calls, letters,

and reporting this disputed information to any credit reporting agencies.

63.    Plaintiff then filed a formal dispute directly to Experian by certified mail on or about July of 2025 and included his new lease, in addition to the creditor's own payment ledger showing that he had paid in full for the month of June and therefore the ledger was in error.

64.    Experian responded to the dispute and sent correspondence to Plaintiff on or out about August of 2025 stating that in response to a subsequent investigation request from Experian and after Plaintiff's written dispute, Rent Recovery Solutions knowingly verified the information and Account as accurate.

65.    Plaintiff filed a complaint with the Consumer Financial Protection Bureau on or about September 1, 2025, where he described that he did not owe the debt on the Account as his tenancy with the property had ended on June 14, 2020, per his lease.

66.    As of December 2025, Experian is still reporting the Rent Recovery Account as a collection account with a balance of $1,426.00 past due.

67.    Plaintiff has continued to receive collection letters from Rent Recovery regardless of their awareness that the debt is invalid.

**RENT RECOVERY'S DEBT COLLECTION COMMUNICATIONS**

68.    Plaintiff signed a lease with Circle Arms LLC on or about June of 2019.

69.    Plaintiff agreed with Cricle Arms to pay a full month's rent in the amount of $1,850.00 in order to stay in the apartment for the entire month of June, rather than departing on June 14 as his lease indicated, and then start his new lease at another

property on July 1, 2020.

70.    Plaintiff terminated this lease on or about June 30, 2020, when he vacated the premises and signed a new binding lease agreement elsewhere.

71.    On or about July of 2025, **nearly five years after** Plaintiff had vacated the prior lease, Rent Recovery sent a collection letter to Plaintiff in its attempt to collect the alleged debt for rent from the entire month of July of 2020.

72.    Plaintiff called both Circle Arms and Rent Recovery to relay the mistake and formally disputed the charge in writing.

73.    Plaintiff later began receiving more collection letters from Rent Recovery even after his formal written dispute advising that the balance on the Account was still owed.

74.    More specifically, Rent Recovery's collection letter asserted that Plaintiff owed a balance of $1,426.00 for an alleged July 2020 rent payment, when Plaintiff had vacated the apartment and was living elsewhere.

75.    Rent Recovery's conduct, as described above, is knowing, willful, and continuing violation of Plaintiff's rights, as enumerated under Florida state and federal law.

76.    Given Rent Recovery's conduct and its apparent intention and ability to continue to collect the Alleged Debt directly from Plaintiff, Defendants are in violation of said debt collection laws.

77.    Rent Recovery's conduct served no purpose other than to abuse and harass Plaintiff into paying the Alleged Debt, leading Plaintiff to believe that despite

not owing the Alleged Debt personally as he ended the lease and tenancy associated with the Account and vacated the premises as required, Plaintiff had no choice but to pay the Alleged Debt or continue to endure Rent Recovery's unlawful debt collection practices.

## DAMAGES

78.    As a result of Defendants' reporting of the Alleged Debt, Plaintiff further dealt with the stress and anxiety of feeling hopeless, believing that he would be denied credit as a result of the erroneous and incorrect reporting of the Account reflecting the Alleged Debt asserted as owed by Plaintiff if he needed to obtain credit in the near future, and that Plaintiff would either be denied credit or pay higher interest rates in the event he could obtain financing.

79.    As a result of Defendants' conduct, actions, and inactions, Plaintiff was deterred from making credit applications as he believed he would not be able to obtain favorable credit terms as a result of Defendants' derogatory and continued reporting of the Accounts with balances past-due, he did not wish to further damage her credit score with futile credit inquires, and he was continually evaluated for credit using consumer reports that reported the Accounts with late payment information resulting in the Accounts being reported as a derogatory, negative, or adverse accounts.

80.    More specifically, Plaintiff was denied credit for a loan through Ready Capital in the amount of $500,000.00 for a business venture as a direct result of the errors in credit reporting of this Account by Experian.

81.    Plaintiff was also recently denied another business loan through Newtek

Bank on December 22, 2025, citing poor personal credit history through Experian specifically.

82.    Overall, Plaintiff suffered damage to his reputation as a result of Defendants' conduct.

83.    Further, as a result of Defendants' actions, Plaintiff suffered emotional distress, anxiety, inconvenience, frustration, annoyance, fear, and confusion, believing that despite Plaintiff's exhaustive efforts to convey to Defendants that he ended his lease by vacating the premises prior to the move out date of June 30th, 2021, and thus owed no obligation to Defendant, Plaintiff must simply endure Rent Recovery's ongoing attempts to collect the Alleged Debt.

84.    Plaintiff retained Swift, Isringhaus, Dubbeld & McEleney, PLLC for the purpose of pursuing this matter against Defendants, and Plaintiff is obligated to pay his attorneys a reasonable fee for their services.

85.    The FCRA, Sections 1681n or 1681o, or both, provide for the award of up to $1,000.00 statutory damages, actual damages, punitive damages, as well as an award of attorneys' fees and costs to Plaintiff, should Plaintiff prevail in this matter against Defendant.

**COUNT ONE:**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1681e(b)**
**(As to Experian)**

Plaintiff re-alleges paragraphs one (1) through eighty-five (85) as if fully restated herein and further states as follows:

86.     Experian is subject to, and violated the provisions of, 15 United States Code, Section 1681e(b), by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files published and maintained concerning Plaintiff.

87.     Experian willfully and/or negligently failed to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports with respect to the Account.

88.     Specifically, despite Plaintiff advising Experian that Plaintiff ended his lease and obligation to the landlord, and thus did not owe any additional debt, did not authorize any other person to open the Account in his name or on his behalf, did not receive the benefit of any services obtained as a result of any transactions or charges made on the Account—Experian continued to report the Account as with a balance past-due, and with fraudulent derogatory payment history resulting in the Account being reported as a derogatory, negative, or adverse account in Plaintiff's credit reports and credit files.

89.     Despite Plaintiff notifying Experian of their reporting errors and providing documents in support of his disputes, Experian continued to report the Account with a past-due balance.

90.     As a result of Experian's conduct, actions, and inactions, Plaintiff suffered damage to his credit reputation and credit worthiness, was deterred from making credit applications or obtain favorable credit terms as a result of Defendants' derogatory and continued reporting of the Account, did not wish to further damage

his credit score with futile credit inquires, and he was continually evaluated for credit using consumer reports that reported the Account with late payment information resulting in the Account being reported as a derogatory, negative, or adverse tradeline account.

91.    More specifically, Plaintiff was denied credit for a loan through Ready Capital in the amount of $500,000.00 for a business venture as a direct result of the errors in credit reporting of this Account by Experian.

92.    Plaintiff was also recently denied another business loan through Newtek Bank on December 22, 2025, citing poor personal credit history through Experian specifically.

93.    Experian's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

94.    Experian's violations of 15 United States Code Section 1681e(b), constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n, or 1681o, or both.

## COUNT TWO:
## FAIR CREDIT REPORTING ACT –
## <u>VIOLATION OF 15 UNITED STATES CODE, SECTION 1681s-2(b)</u>
### (As to Rent Recovery)

Plaintiff re-alleges paragraphs one (1) through eighty-five (85) as if fully restated

herein and further states as follows:

95.    Rent Recovery is subject to, and violated the provisions of, 15 United States Code, Section 1681s-2(b), by willfully and/or negligently publishing or furnishing inaccurate trade-line information within Plaintiff's credit reports, failing to fully and properly re-investigate Plaintiff's disputes, failing to review all relevant information regarding the same, and failing to request that Experian delete the Account from Plaintiff's credit reports and credit file after re-investigating Plaintiff's repeated disputes.

96.    As described above,  Plaintiff was not and is not personally liable for the Account, because: (i) Plaintiff ended his lease on 6/30/20 after paying a full months rent and thus did not re- open the Account or open a new Account corresponding to a lease; (ii) Plaintiff did not authorize any person to re-open the Account or lease in Plaintiff's name or on Plaintiff's behalf; (iii) Plaintiff did not receive the benefit of living at the property and having a current lease during this time period nor any money, goods, or services from any charges or transactions made using the Account; and (iv) Plaintiff completed a Consumer Financial Protection Bureau Complaint to illustrate the inaccurate attempt to collect this debt.

97.    Despite Plaintiff not being responsible for the Account, and despite Rent Recovery receiving notice of Plaintiff's disputes from Experian, Rent Recovery willfully and/or negligently failed to request that Experian delete the tradeline associated with the Account and continued to report derogatory, late payment information to Experian including as past-due with a balance owed on the Account.

19

98.    On or about August of 2025, Plaintiff disputed Rent Recovery's reporting of the Account to Experian, and Experian forwarded Plaintiff's disputes to Rent Recovery.

99.    In response to Plaintiff's disputes, despite Rent Recovery receiving notice of Plaintiff's disputes—Rent Recovery failed to request that Experian delete the Account from Plaintiff's credit reports and credit files.

100.    Instead, Rent Recovery purportedly verified its reporting of the Account including a balance due and significantly past-due.

101.    Rent Recovery's refusal to request that Experian update their reporting of the Account as Plaintiff requested was intentionally, willfully, and knowingly done as Rent Recovery clearly possessed knowledge that the Account was opened in error.

102.    More specifically, Rent Recovery knew that Plaintiff had ended his lease and vacated the premises when they charged him for the entire month of June.

103.    Rent Recovery's re-investigations were not conducted in good faith.

104.    Rent Recovery's re-investigations were not conducted reasonably.

105.    Rent Recovery's re-investigations were not conducted using all information and documents reasonably available to Rent Recovery.

106.    As a result of Rent Recovery's conduct, actions, and inactions, Plaintiff suffered damage to his credit reputation and credit worthiness, was deterred from making credit applications as he was informed he may not qualify for credit as long as Rent Recovery continued reporting the Account, believed he would not be able to obtain favorable credit terms as a result of Rent Recover's derogatory and continued

reporting of the Account, did not wish to further damage his credit score with futile credit inquires.

107.    Rent Recovery's conduct was a direct and proximate cause of, as well as a substantial factor in, causing the serious injuries, damages, and harm to Plaintiff as stated herein.

108.    Rent Recovery's actions in violation of 15 United States Code, Section 1681s-2(b), constitute negligent or willful noncompliance, or both, with the FCRA, and entitles Plaintiff to actual damages, statutory damages, and punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

### COUNT THREE:
### FAIR CREDIT REPORTING ACT –
### VIOLATION OF 15 UNITED STATES CODE, SECTION 1681i *et seq.*
### (As to Experian)

Plaintiff re-alleges paragraphs one (1) through eighty-five (85) as if fully restated herein and further states as follows:

106.    Experian is subject to, and each violated the provisions of, 15 United States Code, Section: 1681i(a)(1), by failing to conduct reasonable re-investigations of Plaintiff's disputes to determine whether the disputed information was inaccurate and by failing to subsequently update the inaccurate information in Plaintiff's credit reports and credit files; 1681i(a)(4), by failing to review and consider all relevant information received in Plaintiff's disputes, including all relevant attachments; and 1681i(a)(5) by failing to update or delete any information that was the subject of Plaintiff's disputes

found to be inaccurate or that could not be verified.

107.    Specifically, Experian willfully and/or negligently refused to properly re-investigate Plaintiff's consumer reports upon receiving Plaintiff's disputes, as described herein.

108.    Overall, Plaintiff's disputes provided Experian with sufficient information and supporting documentation allowing Experian to identify that the alleged balance owed on the Account was created in error, and therefore should be deleted and removed from Plaintiff's credit reports and credit files.

109.    For example, despite Plaintiff's disputes including his new lease in Arlington Virginia showing he was living elsewhere for the Account dates at issue, and despite the inconsistent shown in Circle Arm's ledger, Experian failed to request documents from Rent Recovery in support of Rent Recovery's reporting of the Account.

110.    Following Plaintiff's First Dispute, Experian continued to report the Account in Plaintiff's credit reports and files with a significant balance due as well as derogatory, late payment information.

109.    Given that Plaintiff terminated the lease associated with the Account before the renewal date had begun, Plaintiff did not re-open the Account, did not authorize any person to open the Account in Plaintiff's name or on Plaintiff's behalf; that Plaintiff possessed no knowledge of the Account balance until he received his credit report **nearly five years later** the Account had been added as past due, and that Plaintiff only had knowledge that he had closed the account and forfeited his lease;

22

and given that Experian did not request any documents from Rent Recovery supporting Rent Recovery's reporting of the Account, Experian, could not reasonably verify that Plaintiff is personally responsible for the balance allegedly owed on the Account.

111.   As such, Experian's re-investigations were not conducted in such a way as to assure whether information regarding Plaintiff and the Account was inaccurate and Experian failed to subsequently update and remove the inaccurate information in Plaintiff's credit reports and credit files.

112.   Such reporting is false and evidences Experian's failure to conduct reasonable re-investigations of Plaintiff's repeated disputes.

113.   Experian's reinvestigations of Plaintiff's disputes were not conducted reasonably.

114.   Experian's reinvestigations merely copied and relied upon the inaccurate information conveyed by Rent Recovery.

115.   Experian's reinvestigations of Plaintiff's disputes were not conducted in good faith.

116.   Experian's reinvestigation procedures are unreasonable.

117.   Experian's re-investigations of Plaintiff's disputes were not conducted using all information reasonably available to Experian.

118.   Experian's failure to review and reasonably consider all information received in Plaintiff's disputes—which clearly showed the alleged balance was not owed as Plaintiff did not have an active lease at this time, did not engage in a month-

23

to-month lease, and was not a holdover tenant when he was charged.

119.    Experian's reinvestigations were *per se* deficient by reason of these failures in Experian's, reinvestigations of Plaintiff's disputes and the Account.

120.    As a result of Experian's conduct, actions, and inactions, Plaintiff suffered damage to his credit reputation and credit worthiness, was deterred from making credit applications as he knew he would not be able to obtain favorable credit terms as a result of Defendant's derogatory and continued reporting of the Account, did not wish to further damage his credit score with futile credit inquires, and he was continually evaluated for credit using consumer reports that reported the Account with late payment information resulting in the Account being reported as a derogatory, negative, or adverse tradeline account.

121.    Experian's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

122.    Experian's actions in violation of 15 United States Code, Section 1681i *et seq.*, constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive, damages, as well as attorneys' fees and costs enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

## COUNT FOUR:
## UNLAWFUL DEBT COLLECTION PRACTICE –
## VIOLATION OF FLORIDA STATUTES, SECTIONS 559.72(7) and (9)
## (As to Rent Recovery)

Plaintiff re-alleges paragraphs one (1) through eighty-five (85) as if fully restated herein and further states as follows:

110. Rent Recovery is subject to, and violated the provisions of, Florida Statutes, Section 559.72(7) by communicating with Plaintiff in an attempt to collect an alleged consumer debt through means which can reasonably be expected to abuse or harass Plaintiff and violated Florida Statutes, Section 559.72(9) by communicating with Plaintiff in an attempt to collect the Alleged Debt despite possessing knowledge that the Alleged Debt is not legitimately owed by Plaintiff as his lease was terminated.

111. Specifically, as stated herein, Plaintiff was not and is not personally liable for the Alleged Debt, because: (i) Although Plaintiff did personally apply for or receive a prior lease linked to the Account, he terminated the lease associated with the Account before the renewal date had begun, (ii) Plaintiff did not re-open the Account, did not authorize any person to open the Account in Plaintiff's name or on Plaintiff's behalf; (iii) Plaintiff possessed no knowledge of the Account balance until he received his credit report **nearly five years later** the Account had been added as past due as Plaintiff only had knowledge that he had closed the account and forfeited his lease; (iv) Plaintiff did not receive the benefit of any services from any charges or transactions made using the Account as Plaintiff's lease was not active at the time he was being charged.

112. Plaintiff repeatedly provided the above-listed information including his name and address, his account number associated with his previous Account, the Account ledger provided to him from Circle Arms LLC, and his new lease in Arlington

Virginia which reveals a move in date of July 1, 2020.

113.    As such, Rent Recovery possessed actual knowledge that Plaintiff did not legitimately owe the Alleged Debt, yet they continued to communicate directly with Plaintiff in an attempt to collect the Alleged Debt.

114.    More specifically, despite possessing knowledge that the Alleged Debt was not legitimately incurred by Plaintiff and therefore not legitimately owed by Plaintiff, Rent Recovery sent a collection letter to Plaintiff demanding payment on the Alleged Debt throughout 2025, with the most recent letter received by Plaintiff on or about November 4, 2025.

115.    As such, Rent Recovery attempted to collect the Alleged Debt and asserted a legal right that does not exist in its collection letter made in an attempt to collect the Alleged Debt from Plaintiff.

116.    Despite Plaintiff's exhaustive efforts advising that the Alleged Debt was not owed by him as he had terminated his lease prior to July 2020, Rent Recovery continued to communicate with Plaintiff in an attempt to collect the Alleged Debt.

117.    Rent Recovery's conduct served no purpose other than to abuse and harass Plaintiff into paying the Alleged Debt, leading Plaintiff to believe that despite not re-opening the Account personally nor authorizing another individual to open the Account in his name or make charges to the same, and despite receiving no benefit or service from the Account for the dates of service alleged, Rent Recovery could and would continue to attempt to collect the Alleged Debt from Plaintiff unless and until Plaintiff paid the Alleged Debt in full.

118.   As a result of Rent Recovery's actions, Plaintiff suffered emotional distress, anxiety, inconvenience, frustration, annoyance, fear, and confusion, believing that despite not owing the Alleged Debt personally, Plaintiff must simply endure Defendant's ongoing and invasive debt collection communications.

119.   Rent Recovery's willful violation of, *inter alia*, the Florida Consumer Collection Practices Act as a means to collect the Alleged Debt constitutes unlawful conduct and harassment as is contemplated under Florida Statutes, Sections 559.72(7) and 559.72(9).

120.   As a direct and proximate result of Rent Recovery's actions, Plaintiff sustained damages as defined by Florida Statutes, Section 559.77.

**COUNT FIVE:**
**UNLAWFUL DEBT COLLECTION PRACTICE –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1692e, e(2)(A), and**
**e(10)**
**(As to Rent Recovery)**

Plaintiff re-alleges paragraphs one (1) through eighty-five (85) as if fully restated herein and further states as follows:

121.   Rent Recovery is subject to, and violated the provisions of, 15 United States Code, Section 1692e, e(2)(A), e(8), and e(10) by using false representations and deceptive means in attempting to collect the Alleged Debt, including by falsely representing the amount, legal status, or character of the Alleged Debt.

122.   Specifically, Rent Recovery possessed actual knowledge that the account was closed, that Plaintiff did not re-open the account or authorize any other individual

to open the accounts in his name and likewise did not receive the benefits if any goods or services forming the basis of the Alleged Debt and Plaintiff repeatedly advised Defendants that he did not owe the Alleged Debt for such reasons.

123.    Despite knowing that Plaintiff did not owe the Alleged Debt, Rent Recovery sent at least one (1) letter to Plaintiff asserting a balance owed by Plaintiff with respect to the Alleged Debt in its attempts to collect the Alleged Debt.

124.    Moreover, Rent Recovery falsely and deceptively asserted that they could and would continue to collect the Alleged Debt from Plaintiff unless and until Plaintiff paid the Alleged Debt.

125.    Rent Recovery's above-referenced conduct attempts to deceive and mislead Plaintiff into believing that Plaintiff must immediately make payment to Rent Recovery on the Alleged Debt or continue to endure their unlawful collection attempts, the repetitive transfer of the Alleged Debt to a new debt collector, and potential derogatory credit reporting of the Alleged Debt as owed by Plaintiff personally.

126.    As a direct and proximate result of Rent Recovery's actions, Plaintiff sustained damages as defined by 15 United States Code, Section 1692k.

## **PRAYER FOR RELIEF**

**WHEREFORE**, as a direct and proximate result of Defendants' conduct, Plaintiff respectfully requests an entry of:

a.    Judgment against Defendants for maximum statutory damages for violations of the FCRA;

28

b.      Judgement declaring that Rent Recovery violated the FCCPA;

c.      Judgment enjoining Rent Recovery from engaging in further conduct in violation of the FCCPA;

d.      Judgment against Rent Recovery for maximum statutory damages under the FCCPA;

e.      Judgement against Rent Recovery for maximum statutory damages for violations of the FDCPA;

f.      Actual damages in the amount to be determined at trial.

g.      Compensatory damages in the amount to be determined at trial;

h.      Punitive damages in the amount to be determined at trial;

i.      An award of attorney's fees and costs; and

j.      Any such relief the Court may deem proper.

k.      Judgment against Rent Recovery for maximum statutory damages for violations of the FDCPA;

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues triable by right.

## SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE

Plaintiff hereby gives notice to Defendants and demands that Defendants and their affiliates safeguard all relevant evidence—paper, electronic documents, or data—pertaining to this litigation as required by law.

Respectfully submitted,

**SWIFT LAW PLLC**

29

/s/ *Jon P. Dubbeld*

Jon P. Dubbeld, Esq., FBN 105869
11300 4th Street N., Suite 260
St. Petersburg, FL 33716
Phone: (727) 300-1929
Fax: (727) 255-5332
jdubbeld@swift-law.com
jmurphy@swift-law.com
*Counsel for Plaintiff*